825 A.2d 1173 (2003)
361 N.J. Super. 419
Robert W. SCHULZE, Plaintiff-Appellant,
v.
Lisa M. MORRIS, f/k/a Lisa M. Schulze, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 2003.
Decided June 27, 2003.
*1174 Robert B. Kornitzer, Short Hills, argued the cause for appellant (Budd Larner Rosenbaum Greenberg & Sade, attorneys; Deborah E. Nelson and Mr. Kornitzer, on the brief).
Peter J. Laemers, Newton, argued the cause for respondent (Morris, Downing & Sherred, attorneys; Mr. Laemers and Stephen A. Snyder, on the brief).
Before Judges EICHEN, FALL and WEISSBARD.
The opinion of the court was delivered by FALL, J.A.D.
In this post-judgment matrimonial appeal, we address the issue of the standards to be applied when the joint legal, non-residential custodial parent opposes relocation of the parties' child by the joint legal, residential custodial parent to another residence within the State of New Jersey. Here, both parties and the child had been residing in the same county. We conclude that such circumstances do not constitute a statutory "removal" action pursuant to N.J.S.A. 9:2-2, requiring court approval for the proposed relocation. However, the relocation of a child by the joint legal, residential custodial parent to another in-state location may constitute a substantial change in circumstances warranting modification of the existing custodial and parenting-time arrangement.
Here, plaintiff Robert W. Schulze appeals from an order entered in the Family Part on March 26, 2002, denying his application to compel defendant Lisa M. Schulze to relocate with their child from Sussex County to Middlesex County. The issues raised in this appeal arise from the following factual and procedural history.
A final judgment of divorce was entered in the Family Part on February 23, 1998, dissolving the parties' marriage, and placing their child, Robert Schulze, III, in the joint legal custody of the parties, with defendant serving as the residential custodian. At the time of entry of the final judgment, plaintiff, a trauma surgeon, was relocating temporarily to Maryland on or about July 1, 1998 in order to perform a fellowship at the University of Maryland.
The parties agreed to a parenting plan that provided for plaintiff to exercise parenting time with the child on alternate weekends, plus one overnight session during the week and a sharing of holidays and extended vacation time. Upon plaintiff's residency in Maryland becoming effective, plaintiff was to have parenting time with the child during two weekends each monthone weekend in New Jersey and one weekend in Maryland. It was anticipated that plaintiff would be returning to reside in New Jersey on or about July 1, 1999, whereupon the plaintiff's parenting time with the child "shall be renegotiated[,]" and "[i]f the parties cannot amicably resolve this issue, either party may apply to the Court to fix the parenting time schedule."
At the time of divorce, the parties jointly owned a condominium at 32 Keith Court in Kendall Park, Middlesex County. The parties' agreement, which was incorporated into the final judgment, permitted defendant to reside in the condominium until December 31, 2001, or as otherwise extended by the parties. It was acknowledged that defendant could also choose to vacate that residence at an earlier date, but she agreed not to make an application to reside outside New Jersey with the child prior to June 30, 2000, unless plaintiff failed to return to New Jersey after completion *1175 of his fellowship. The agreement provided that upon defendant vacating the residence, it was to be sold, with the net sales proceeds to be equally divided between the parties. Alternatively, defendant could opt to purchase plaintiff's interest therein under a formula prescribed in the final judgment.
The record indicates that in April and May 2000, the parties were discussing defendant's attempts to secure financing sufficient to purchase plaintiff's interest in the property. However, that did not occur and defendant decided to sell the property and re-locate to the Sussex County area.
When plaintiff returned to New Jersey he took a position at Kings Hospital Center in Brooklyn, New York. Plaintiff has remarried and has established a residency in Metuchen, Middlesex County.
Defendant is an elementary school teacher, and was working in the Highland Park School District in Middlesex County. However, when she was not offered tenure at the end of three years, she sought a position elsewhere and decided to move to Vernon in Sussex County.
On plaintiff's application, an order to show cause was executed on June 27, 2000, directing defendant to show cause why she should not be restrained from relocating the child outside the boundaries of Middlesex County. Plaintiff also sought a custody evaluation and a plenary hearing pertaining to his application for a change in residential custody. Defendant filed a cross-motion seeking an order compelling plaintiff to participate in mediation for the purpose of establishing a parenting schedule.
After conducting a hearing on July 21, 2000the return date of the order to show causethe court entered an order on August 17, 2000, directing that a plenary hearing be scheduled within ninety days "regarding whether the defendant may relocate with the child of the marriage to Vernon Township, New Jersey." The order also required the parties to engage in mediation in an attempt to resolve the matter. Defendant was permitted to relocate to Vernon Township, without prejudice, and an interim parenting-time plan was ordered. The order also provided for discovery, and denied plaintiff's application for appointment of a custody expert, ruling that plaintiff "has not established a substantial change in circumstance which would permit a change in residential custody."
On or about March 5, 2002, defendant filed a motion for summary judgment, seeking an order dismissing plaintiff's application. Plaintiff filed a cross-motion seeking an order denying defendant's application and assessing counsel fees.
The motions were argued in the Family Part before a different judge on March 22, 2002. In granting defendant's motion, and denying plaintiff's motion, the judge stated, in pertinent part:
In light of the fact that it has been almost 18 months ... since that application was made to the court, the circumstances have presented themselves to this court to show that the information that was missing at the time we now have.
We have a defendant who has been working, apparently, since she was allowed to move. And I note that [the former judge] indicated that she could move; however, she would do so at her own risk, and that he only granted, again, that potential for [a] plenary hearing because he was interested in whether or not she had a sure employment possibility, and what type of work she would be doing when she got to Sussex County. I find nothing in the transcript [of the July 21, 2000 hearing] that would indicate to me that [the judge] felt that not allowing the defendant *1176 to move would impact so negatively on Dr. Schulze that she should not be allowed to move.
* * * * * *
You have a custodial parent who wants to relocate.... Her relocation was not outside the state. There is a standard set that courts must comply with when making a determination to allow a parent to relocate ... outside the state.
I see no reason that that standard should be applied to the defendant in this case. It is a higher standard than what is called for, in light of the fact that we don't have a request to move outside this state. We had a request to move within the state.
Now why is it that the defendant should be curtailed in her being able to secure a lifestyle that is, not only in her best interest, but in the child's best interest, simply because she wants to move from one part of the state to another? These parties, I believe, can renegotiate a parenting schedule.
It would appear to me that, in light of the fact that this is an intrastate location, that the visitation schedule would be a lot easier to develop, and Dr. Schulze would have an easier time exercising parenting time, in light of the fact that the child is still in this state, than if she were asking to move outside the State. If the defendant were asking to move from the State of New Jersey to California, there would definitely be no midweek visitations. There might not be any weekend visitations. But, based upon what I have before me and the standards for a parent to move outside of the State of New Jersey, I don't see that she wouldn't be allowed to move out of the State of New Jersey. So, again, why would I curtail her moving within this state, if I wouldn't curtail her moving outside the state?
* * * * * *
And, therefore, I am going to grant the defendant's request and dismiss the application of the plaintiff requiring the defendant to relocate to Middlesex County from Sussex County.
An order memorializing the court's decision was entered on March 26, 2002.
On appeal, plaintiff presents the following arguments for our consideration:
POINT I
THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT WITHOUT THE PLENARY HEARING THAT HAD BEEN PREVIOUSLY ORDERED AND BY ACCEPTING [DEFENDANT'S] FACTUAL ASSERTIONS AS TRUE.
POINT II

Pfeiffer v. Ilson[318 N.J.Super. 52, 722 A.2d 986 (Ch.Div.1998), aff'd, 318 N.J.Super. 13, 722 A.2d 966 (App.Div. 1999)] DOES NOT APPLY IN THIS MATTER, AS GENUINE ISSUES OF FACT EXIST.
POINT III
JUDGE PULLEN ABUSED HER DISCRETION BY TRANSFERRING THE "TEMPORARY" RELOCATION INTO A PERMANENT "FAIT ACCOMPLI."
POINT IV
JUDGE PULLEN IS LEGALLY INACCURATE IN HER ASSESSMENT OF THE ROLE OF VISITATION IN AN APPLICATION FOR RELOCATION.
After analyzing the record in the light of the written arguments advanced by the parties and applicable law, we affirm the March 22, 2002 order substantially for the reasons articulated by Judge Pullen in her *1177 well-reasoned oral opinion delivered on March 22, 2002. However, we add the following.
The standards applicable to an application to our courts by a residential custodial parent seeking to remove a child from New Jersey over the objection of the other parentmost recently articulated by the Supreme Court in Baures v. Lewis, 167 N.J. 91, 770 A.2d 214 (2001)are derived from N.J.S.A. 9:2-2, which provides:
When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents divorced, separated or living separate, and such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction against their own consent, if of suitable age to signify the same, nor while under that age, without the consent of both parents, unless the court, upon cause shown, shall otherwise order. The court, upon application of any person in behalf of such minors, may require such security and issue such writs and processes as shall be deemed proper to effect the purposes of this section.
The clear purpose of N.J.S.A. 9:2-2 is to preserve the rights of the non-residential custodial parent and the child to maintain and develop their familial relationship where the custodial parent proposes to remove the child to another jurisdiction. See Holder v. Polanski, 111 N.J. 344, 350, 544 A.2d 852 (1988); Cooper v. Cooper, 99 N.J. 42, 50-51, 491 A.2d 606 (1984). Because of the potential effect of an out-of-state move upon the relationship between the child and non-residential custodial parent, in interpreting N.J.S.A. 9:2-2, the courts have established various criteria and factors to consider and be applied when determining a removal application. See Baures, supra, 167 N.J. at 116-117, 770 A.2d 214.
There is, however, no corresponding requirement or burden of application placed upon a residential custodial parent who desires to move, with the child, from one location within New Jersey to another. Thus, as the issue was posited, the entry of summary judgment in favor of defendant on the issue of "whether the defendant may relocate with the child of the marriage to Vernon Township, New Jersey[,]" was appropriate. Simply put, this is not a "removal" case.
We fully recognize that the relocation of a child by the residential custodial parent from one location in New Jersey to another may have a significant impact upon the relationship between the child and the non-residential custodial parent that may constitute a substantial change of circumstances warranting modification of the custodial and parenting-time arrangement. However, this appeal has not been so presented. Specifically, plaintiff has not appealed from that portion of the court's August 17, 2000 order determining that he had failed to establish a substantial change of circumstances that would permit a change in residential custody.
When a non-residential custodial parent opposes the intrastate relocation of his or her child by the primary residential custodial parent on the basis that the move will be deleterious to the relationship between the child and the non-residential custodial parent, or will be otherwise inimical to the child's best interests, those factors outlined by Justice Long in Baures, supra, 167 N.J. at 116-17, 770 A.2d 214, as well as other relevant matters, should be considered in determining whether modification of the custodial and parenting-time arrangement is warranted. Of course, as noted by the Court, "not all factors [would] be relevant and of equal weight in every case." Id. at 117, 770 A.2d 214. Now that defendant and the child have resided in *1178 Vernon Township for nearly three years, circumstances may have changed to warrant modification of the existing custodial and parenting-time plan. That issue, however, is not before us.
Here, we also note that the parties' agreement inferentially recognized defendant's right to move within New Jersey at the time the condominium was sold. Moreover, their agreement did not in any way restrict defendant's move to a location within Middlesex County. Stated another way, the parties never agreed that defendant would not move, with the child, to another county within New Jersey.
Affirmed.