# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3272-17T4

D.S.,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

J.R.,

      Defendant-Appellant/
      Cross-Respondent.

_____

      Submitted April 9, 2019 – Decided April 25, 2019

      Before Judges Fisher and Geiger.

      On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FD-21-0103-13.

      Martin & Tune, LLC, attorney for appellant/cross-respondent (Stefanie C. Gagliardi, of counsel and on the brief).

      Joseph J. Fritzen, attorney for respondent/cross-appellant.

PER CURIAM

This appeal arises from the ongoing dispute between plaintiff D.S. (Darla) and defendant J.R. (Jerald) over the custody, parenting time, and school enrollment of their young son Z.R. (Zeke), who is now seven years old.[1] The parties were in a dating relationship when the child was born and moved in together to raise the child. After the relationship dissolved, continued co-parenting issues led the parties to share joint legal custody and split physical custody pursuant to a 2014 custody and parenting time consent order with the understanding they would revisit the issues when Zeke was old enough to enroll in kindergarten.

Jerald resides in Oxford. Darla resided in nearby Belvidere, but moved temporarily to Marlboro, before moving permanently to Colts Neck. This intrastate, seventy-mile change in residence precipitated Jerald applying to modify the 2014 order in several respects. Jerald sought an order: (1) declaring him parent of primary residence (PPR) and awarding him sole physical custody, (2) directing Zeke be enrolled in school in Oxford, and (3) modifying the parenting time schedule.

---

[1] We use fictitious names to protect the privacy of all involved.

A-3272-17T4

The trial court conducted a six-day plenary hearing and requested written closing arguments. As part of her written closing argument, Darla claims she sought an award of attorney's fees and costs.[2] The trial court issued an order and thirty-three-page written statement of reasons denying Jerald's custody and school enrollment applications but modifying the parenting time schedule. The order and statement of reasons did not address Darla's fee request. Darla moved for reconsideration of the increase in parenting time awarded to Jerald during Zeke's sports season and the non-disposition of her request for an award of attorney's fees and costs. The trial court dismissed the motion for reconsideration only because Jerald filed a notice of appeal before the motion's return date. Neither party requested a temporary remand for disposition of the undecided attorney's fee issue.

Jerald appeals from the Family Part order deciding his custody, parenting time, and school enrollment applications. Darla cross-appeals from a subsequent order denying her motion for reconsideration of one aspect of the parenting time ruling and for an award of attorney's fees.

---

[2] Darla did not file a motion for counsel fees and costs prior to the trial court's decision. She claims she requested an award of counsel fees in her written closing argument. The closing arguments are not part of the record before us.

After close examination of the record, we affirm the custody and parenting time rulings substantially for the reasons set forth by Judge Haekyoung Suh in her thorough, thoughtful, and well-reasoned decision. We remand for disposition of Darla's application for attorney's fees and costs.

I.

The following facts were adduced during the course of the plenary hearing. The parties began dating in 2009. They became engaged in December 2010 but never married. They purchased a home together in Belvidere in June 2011. Darla was a waitress and Jerald was an information technology technician. Zeke was born in October 2011.

The relationship deteriorated in April 2012 when an argument resulted in Darla throwing off her engagement ring and ending the relationship. Zeke was then six months old. Jerald left the Belvidere house and, by agreement, Darla had one year to refinance the mortgage. Darla ultimately left the Belvidere home in June 2017.

The parties agreed to the terms of a custody and parenting time consent order in January 2014. Notably, the order did not designate a PPR or parent of alternate residence. Day-to-day decisions for Zeke were allocated to the "on-duty parent." Such routine decisions included: meals, babysitting, and

4

transportation. The other parent was under no obligation to provide physical childcare during the on-duty parent's parenting time. Both parties, however, maintained the right to communicate with any physicians or other professionals regarding Zeke.

Jerald exercised his parenting time with Zeke pursuant to a fourteen-day schedule. In week one, Jerald had parenting time from Monday afternoon to Tuesday morning, and then again from Friday morning until Monday evening. In week two, Jerald had parenting time after work on Thursday until Darla got off work on Friday. During all other times, Darla exercised parenting time with Zeke. This schedule was suspended during enumerated holidays, with the parties alternating the holiday schedule annually.

When Zeke turned five years old, Jerald contacted Darla to reevaluate the parenting time schedule before enrolling the child in kindergarten. Jerald suggested the parties split their time with Zeke evenly so he could develop a bond with his step-brother Peter. In addition, Jerald desired to help Zeke with his homework more than once a week.

Specifically, Jerald proposed altering week one so he had parenting time from Monday afternoon to Wednesday morning, with the Friday through Monday weekend parenting time remaining the same. Week two would be

altered so Jerald exercised parenting time from Wednesday afternoon to Friday morning. The proposed change would result in Jerald having one extra day of parenting time per week. The proposal would continue to alternate the weekend schedule. At this point in time the parties lived ten minutes apart.

Darla unequivocally rejected Jerald's proposal. Her focus was on reducing transitions between homes. To that end, Darla counter-proposed Jerald decrease his parenting time with Zeke and visit him during preschool and drive him home to Darla. In light of their co-parenting difficulties, Darla suggested they confer with the court-appointed coordinator, Dr. Lee Monday.

Dr. Monday recommended Jerald receive an extra night during the week with Zeke. Darla again rejected the expansion of Jerald's parenting time. She insisted increasing Jerald's parenting time was not in Zeke's best interest. Darla reaffirmed her desire to reduce household exchanges, particularly once Zeke would enroll in school full time.

Darla informed Jerald that Zeke's Belvidere kindergarten registration was approaching. Jerald wished to discuss whether Zeke would be attending school in Belvidere or Oxford before registering him. Darla responded, "[a]s the parent of primary residence I feel that it makes more sense to reenroll him at Belvidere." Jerald replied, "I don't feel that you being parent of primary

residence should rule out the best possible academic choice for [Zeke]. There is no penalty in holding off on registration until we can come to an agreement on this and finalize the parenting plan."

Darla then informed Jerald she was listing her Belvidere home for sale and exploring housing options in Ocean, Bergen, and Passaic counties. Notwithstanding Darla's stated intention to relocate and Jerald's protests, Darla unilaterally enrolled Zeke in Belvidere for the 2017-2018 school year. Jerald continued his objections and accused Darla of "extreme parent alienation." Darla sold the Belvidere home in June 2017.

In July 2017, Darla moved into a townhouse in Marlboro with her then-fiancé, her two sons from a previous marriage, and Zeke. In August 2017, Darla and her fiancé wed. In December 2017, the couple signed a lease to rent, with an option to purchase, a home in Colts Neck, roughly seventy miles from Oxford. Darla paid a monthly mortgage of $1600 in Belvidere; her monthly rent in Colts Neck was $3550.

Darla stayed at home and cared for her children full time. She claimed the reason for the move was unrelated to Jerald. Rather, the move was motivated to increase proximity to her husband's job sites in Mount Vernon, New York and

Cherry Hill; to avail the children of the better school districts in Monmouth County; and by her desire to be near the Jersey shore.

Both parties testified to their co-parenting struggles. Jerald testified he was more disciplined and structured in his parenting style, as compared to Darla's permissive approach. Their numerous, common disagreements included: responses to Zeke's illnesses, Zeke's desire to sleep in his mother's bed, the cost of child care, dietary considerations relating to Zeke's food allergies, haircuts, Zeke's participation in therapy, how to communicate with Zeke, missed phone calls with Zeke during the other parent's parenting time, Zeke's participation in sports, dividing parenting time and transitions, and how to split custody in the summer.

During the hearing, Darla sought an order formally designating her PPR. In support, she argued she was always the de facto PPR, because she spent more days with Zeke and she is his mother.

Jerald countered his house was more stable than Darla's. He also expressed concern that Darla would alienate Zeke against him because Darla did not want Zeke to be like Jerald. Jerald testified this concern was born of Darla's confession of the same to him.

8

Dr. Monday's testimony largely corroborated the parties' recitation of events. Jerald's best-interests expert, Dr. Dennis Shaning, opined Jerald should be granted primary physical custody of Zeke. He acknowledged, however, that both parties were capable of caring for Zeke.

Jerald currently lives in Oxford with his wife Jennifer, her two children, and their son in a house they have owned for at least two years. Darla currently lives with her husband Jose, her two sons from a previous marriage, and Zeke. Darla was due to deliver another child in May 2018. Since January 2018, Darla and her husband have rented a house in Colts Neck.

In a comprehensive written opinion, Judge Suh considered each of the fourteen custody factors set forth in N.J.S.A. 9:2-4. Judge Suh found the following factors in equipoise: the parents' ability to agree, communicate, and cooperate in matters relating to the child; the interaction and relationship of the child with his parents and siblings; the needs of the child; the stability of the home environment offered; the fitness of the parents; and the age and number of the children. In addition, the court found the following factors inapplicable: the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; and the preference of the

child when of sufficient age and capacity to reason so as to form an intelligent decision.

Judge Suh found the following factors weighed in Jerald's favor: the parent's willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; and the geographical proximity of the parents' homes. The judge found the following factors favored Darla: the quality and continuity of the child's education; the extent and quality of the time spent with the child prior to or subsequent to the separation; and the parents' employment responsibilities. Judge Suh determined it was in Zeke's best interest to reside primarily with Darla and attend school in Colts Neck.

The judge expressed concern over Darla's "demonstrated parental alienation." Ultimately, the distance between Oxford and Colts Neck rendered a shared parenting plan infeasible. To partially compensate, the court granted Jerald compensatory parenting time on days the schools in Colts Neck were closed, such as in-service teacher days, parent-teacher conference days, and school holidays. The parties were further ordered to alternate spring and winter school breaks and set an exchange location halfway between the parties in Bridgewater. The court also awarded Jerald parenting time after school on

Wednesdays of weeks he did not have weekend parenting time, thereby providing parenting time to Jerald every week.

To take into account Zeke's participation in organized sports, the judge awarded Jerald parenting time during one athletic season per school year on the first three weekends per month, with Darla exercising parenting time on the last weekend. Darla was required to transport Zeke to Jerald's house for mid-week practices or games. In addition, Jerald and Zeke were charged with the decision of which sport he would play. The judge found it equitable to concentrate Jerald's parenting time during a given sports season, with Darla being responsible for mid-week transport, because Darla's sudden move to Colts Neck adversely impacted Jerald's ability to participate in sports with Zeke.

Outside of the chosen sports season, Jerald would exercise parenting time on alternating weekends from Friday after school until Sunday at 5:00 p.m. Parenting time alternated weekly during the summer school break, with Jerald having parenting time for the first week of summer and Darla receiving the last week. The court did not alter the existing holiday parenting schedule or the required phone access during the other parent's parenting time.

In her motion for reconsideration, Darla sought an award of attorney's fees and costs. Counsel's certification in support of the motion stated Darla incurred

11

legal fees and costs totaling $35,367.11 relating to the trial court proceedings. Because the retainer agreement provided for a substantially discounted hourly rate of $200 per hour, the total award sought was $23,935.60.

Jerald sought a stay of the trial court's ruling, which the trial court denied. Jerald also sought reconsideration and an award of attorney's fees and costs of $39,395 for services rendered related to the plenary hearing.

This appeal and cross-appeal followed. Jerald filed a notice of appeal on March 26, 2018. Because the appeal was filed before the trial court decided either party's motion for reconsideration and counsel fees, the court dismissed the motions because it lacked jurisdiction.[3]

Jerald argues the trial court abused its discretion by: (1) failing to consider Darla's parental alienation when it designated her PPR; (2) failing to consider Darla's parental alienation and refusal to co-parent when it determined the best

---

[3] Jerald's notice of appeal and case information statement did not include the April 17, 2018 order denying his motion for reconsideration and attorney's fees and costs. We review "only the judgment or orders designated in the notice of appeal." 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004). Therefore, the order is not part of his appeal. Nor did Jerald brief the issue of the denial of counsel fees in his merits brief. "An appellant may not raise new contentions for the first time in a reply brief." L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014). We decline to consider the issue. Bacon v. N.J. Dep't of Educ., 443 N.J. Super. 24, 38 (App. Div. 2015).

interests of the child; (3) failing to consider the significant impact of the child's relationship with Jerald caused by Darla's relocation to Monmouth County; and (4) failing to invoke its parens patriae power to protect the minor child from the harm inflicted by Darla. Jerald further argues the case should be remanded to a new trial judge.

In her cross-appeal, Darla argues the April 17, 2018 order must be remanded because the trial court never ruled on her request to further explain the parenting time adjustment and to compel Jerald to contribute to Darla's legal fees.

II.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to Family Part judges' findings of fact because of their special expertise in family matters, id. at 413, especially where the evidence is largely testimonial and rests on the judge's credibility findings, Gnall v. Gnall, 222 N.J. 414, 428 (2015). We will not "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the

interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)).

When the parents of a minor child live separately, our trial courts are empowered to review, modify, and effect custody determinations. N.J.S.A. 9:2-3. "[T]he concept of 'joint custody' encompasses both legal and physical custody." Mamolen v. Mamolen, 346 N.J. Super. 493, 498 (App. Div. 2002) (citing Pascale v. Pascale, 140 N.J. 583, 595-96 (1995)). The statute directs the court to consider, without being limited to, the following factors:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.
>
> [N.J.S.A. 9:2-4.]

In resolving a custody dispute, "the primary and overarching consideration is the best interest of the child." Kinsella v. Kinsella, 150 N.J. 276, 317 (1997). "The best-interest analysis is an additional requirement 'superimposed upon an analysis of the statutory scheme.'" Ibid. (quoting Terry v. Terry, 270 N.J. Super. 105, 119 (App. Div. 1994)).

III.

In our view, Jerald's arguments collapse into one another. Each point argues abuse of discretion based on alleged failures of the trial court to consider facts within the record. This interpretation is reinforced by Jerald's reply brief, which reiterates abuse of discretion is evident by the trial court's alleged failure to consider and weigh parental alienation, Darla's refusal to co-parent, the best interests of the child, the need for the child to be protected from further harm, and the negative impact suffered by the child and Jerald in rendering its decision.

In her cross-appeal, Darla argues the trial court erred by denying her motion for reconsideration that sought, in part, clarification relating to the parenting time adjustment ordered by the trial court, which resulted in Jerald receiving disproportionate parenting time during a sports season.

We are unpersuaded by these arguments and affirm the trial court's custody and parenting time rulings substantially for the reasons expressed by Judge Suh. We add only the following comments.

Jerald's reliance on our opinion in <u>Milne v. Goldberg</u>, 428 N.J. Super. 184 (App. Div. 2012) is misplaced. In <u>Milne</u>, we recognized that noncompliance with a court order may be a basis for a custody modification, or a change in the designation of the PPR, in accordance with the Court's pronouncement in <u>Beck v. Beck</u>, 86 N.J. 480, 499 (1981). <u>Id.</u> at 206. We further recognized the consonance between this edict and <u>Rule</u> 5:3-7, which explicitly states remedies for a parent's violation of orders relating to custody or parenting time include "temporary or permanent modification of the custodial arrangement provided such relief is in the best interest of the children." <u>Id.</u> at 207 (quoting <u>R.</u> 5:3-7(a)(6)).

Unlike <u>Milne</u>, this case does not involve refusal by a party to abide by an order or judgment, much less willful refusal to do so. Although Darla may have been difficult to deal with in certain respects, she did not violate court decrees.[4]

---

[4] Darla did not need court approval to move to more distant residences within New Jersey. <u>Schulze v. Morris</u>, 361 N.J. Super. 419, 426 (App. Div. 2003); <u>Helentjaris v. Sudano</u>, 194 N.J. Super. 220, 230 (App. Div. 1984).

To be sure, the trial court considered Darla's conduct and the impact of her relocation. Judge Suh's decision is rife with references to, and consideration of, Darla's parental alienation and the impact her move to Monmouth County had on Jerald's parenting time. While the judge did not consider parental alienation or the impact of the move as separate factors, the issues were interwoven as considerations throughout her analysis. In that regard, the court stated it "remains concerned about [Darla's] demonstrated parental alienation," and found "[c]ompensatory time is necessary." The court cautioned: "If there are further concrete examples of parental alienation by [Darla], the court can envision a scenario where it may be in [Zeke's] best interests to reside with [Jerald] in Oxford."

Judge Suh properly applied the facts of this case to each of the statutory custody factors, and weighed those findings against the backdrop of the best interests of the child standard. Judge Suh determined, on balance, the factors weighed in favor of Darla. The resulting rulings are amply supported by substantial credible evidence in the record. We discern no abuse of discretion and affirm the custody and parenting time rulings.

IV.

We next discuss Darla's application for an award of attorney's fees and costs. Attorney's fees may be awarded in a family action pursuant to Rule 5:3-5(c). R. 4:42-9(a)(1). "An allowance for counsel fees and costs in a family action is discretionary." Eaton v. Grau, 368 N.J. Super. 215, 225 (App. Div. 2004) (citing R. 4:42-9(a)(1)); see also R. 5:3-5(c).

Darla's motion for attorney's fees and costs was not filed until March 6, 2018, some twenty-five days after the trial court rendered its substantive decision. Darla certifies her written closing argument included a request for an award of counsel fees. The fee application was undecided when Jerald filed a notice of appeal on March 26, 2018. The trial court ruled the pending appeal deprived it of jurisdiction to decide the fee applications filed by both parties. See Pressler & Verniero, cmt. 1 on R. 2:9-1(a) (stating "the trial court does not have jurisdiction pending appeal to entertain a motion for . . . reconsideration" (citing Kiernan v. Kiernan, 355 N.J. Super. 89, 92 (App. Div. 2002))). But for the filing of the appeal, the trial court would have rendered a decision on the fee applications.[5] Accordingly, we remand Darla's counsel fee application to the

_____

[5] While the order appealed from did not dispose of all issues as to all parties due to the pending motions for reconsideration and fee applications, Jerald did

trial court for a decision on the merits.  In doing so, we express no opinion on the merits of the application.

Affirmed in part and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

not move for a limited remand, did not move to dismiss the cross-appeal as interlocutory, and has shown no prejudice.  "Failure to do so may be considered by the court in evaluating whether to grant leave to appeal nunc pro tunc." Pressler & Verniero, cmt. 3 on R. 2:4-4(b) (citing N.J. Mfrs. Ins. v. Prestige Health Grp., LLC, 406 N.J. Super. 354, 359 (App. Div. 2009)); see also McGowan v. Barry, 210 N.J. Super. 469, 472 n.2 (App. Div. 1986).  Jerald's motion for reconsideration and an award of counsel fees was also pending when he filed his notice of appeal.  Also, Darla's motion to file her cross-appeal as within time was granted.  R. 2:4-4(b)(2).  "Under these circumstances, we exercise discretion and grant leave to appeal as within time[,]" to consider the merits of the custody and parenting time rulings affecting the parties' young son. Prestige Health, 406 N.J. Super. at 359.