**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1168-18T4

A.J.,

     Plaintiff-Appellant,

v.

R.J.,[1]

     Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| --- |
| October 7, 2019 |
| APPELLATE DIVISION |

Submitted September 11, 2019 – Decided  October 7, 2019

Before Judges Koblitz, Whipple, and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0954-13.

Ross & Calandrillo, LLC, attorneys for appellant (Elizabeth Calandrillo, of counsel and on the briefs).

Andrew M. Wolfenson, attorney for respondent.

The opinion of the court was delivered by

MAWLA, J.A.D.

---

[1]  We use initials to protect the privacy of the parties and their children.

Plaintiff A.J. appeals from a September 28, 2018 order sanctioning her by transferring custody of the parties' children to defendant R.J., for failure to comply with a prior order related to her unilateral intra-state relocation. We hold in cases where a court exercises its authority pursuant to Rules 1:10-3 and 5:3-7(a)(6), it must make findings under N.J.S.A. 9:2-4 that the sanction imposed is in the best interests of the children. We further hold the factors in Baures v. Lewis, 167 N.J. 91 (2001) no longer apply when a court is addressing an intra-state relocation, and instead, pursuant to Bisbing v. Bisbing, 230 N.J. 309 (2017), the court must apply N.J.S.A. 9:2-4. Because the trial judge applied the wrong law related to the intra-state relocation and did not apply N.J.S.A. 9:2-4 when he sanctioned plaintiff, we reverse and remand for further proceedings consistent with this opinion.

We take the following facts from the record. The parties married in 2008, and divorced in 2013. Two children were born of the marriage who are presently ten and eight years of age. The judgment of divorce incorporated a marital settlement agreement (MSA), which designated plaintiff as the parent of primary residence, and granted defendant parenting time every other weekend from Friday to Saturday and one midweek overnight. The parties also agreed to share the holidays and each enjoyed one week of summer vacation with the children.

Post-judgment, plaintiff remarried and had a third child. She, her husband, and the three children resided in a two bedroom apartment in Elizabeth. Plaintiff was employed as a tenured school teacher in Elizabeth. Defendant was employed in New York City and lived in Union.

This dispute began in March 2018, when plaintiff unilaterally moved with the children from Elizabeth to Mount Holly. Prior to the move, the parties only had one text conversation in July 2017, in which defendant stated the children informed him plaintiff was contemplating a move. During the exchange, plaintiff confirmed she wished to move and was searching locally and as far as Mount Laurel. Defendant asked her to remain local because it would be unfair to him and the children to move far away.

Plaintiff moved in March 2018, because her landlord increased the rent and would not give her additional time to search for another residence before doing so. She searched without success for a suitable residence in Elizabeth, Somerset, and Florence. Ultimately, plaintiff moved 62.3 miles away from defendant to Mount Holly, where she had family. Defendant learned of the move several days later by text message. He filed an order to show cause to bar the relocation and modify custody. The trial judge entered an order on May 14, 2018, granting defendant temporary parenting time three weekends each month, ordering mediation, and scheduling a plenary hearing to determine

whether plaintiff would be permitted to remain in Mount Holly. The judge ordered the children to continue attending school in Elizabeth.

Mediation was unsuccessful. The judge conducted a plenary hearing resulting in the entry of a July 16, 2018 order. He concluded in his written decision that before the start of the 2018-19 school year, plaintiff had to return with the children and reside within fifteen miles of Union. Pending plaintiff's return, the judge directed the parties to abide by the temporary parenting time established under the May order. Once plaintiff returned, defendant's parenting time would revert to the schedule in the MSA.

Significantly, although the judge's decision recognized "Baures . . . has since been overruled by Bisbing," his reasoning relied upon our decision in Schulze v. Morris, 361 N.J. Super. 419 (App. Div. 2003), which applied the Baures factors to determine whether a parent could relocate intra-state. Applying a preponderance of the Baures factors, the trial judge explained "[p]laintiff's decision may not have been solely driven by a desire to alienate the children from their father, but was certainly done in wanton disregard of his rights, with the result being that his relationship with them will clearly suffer." The judge concluded the distance between the parties' residences increased the travel time from "minutes away" to "slightly over an hour[.]" The judge noted if the children resided in Mount Holly defendant could no

A-1168-18T4

longer leave work early to tend to a sick child, enjoy additional parenting time, or attend extracurricular activities as he had in the past. The judge found the surreptitious nature of the move belied plaintiff's explanation that she did not inform defendant because she did not have time.

The judge concluded it was not in the best interests of the children to relocate because the move would be "deleterious to the relationship with [defendant.]" He noted, because plaintiff remained employed in the Elizabeth school district, neither parent would be near the children during the school day. The judge found plaintiff "offered little or no testimony" as to whether the Mount Holly schools were better for the children than the magnet schools they attended in Elizabeth, where the children had excelled academically. The judge also noted the parties' eldest child experienced behavioral issues and the relocation away from defendant would harm the child because defendant could not "be there for his son as he goes through these issues[.]"

Plaintiff did not return. Defendant filed an order to show cause seeking enforcement of the July order. Specifically, he sought the court to compel plaintiff and the children to return, a transfer of residential custody pending a final determination of custody, and termination of his child support obligation. The trial judge heard oral argument on September 28, 2018.

Plaintiff's counsel argued it was impossible for plaintiff to comply with the July order because she signed a lease for the residence in Mount Holly through April 2019, and could not afford both a lease in Mount Holly and a second residence within the court-ordered radius. The judge rejected plaintiff's argument in his oral findings, noting her improper relocation to Mount Holly created the difficult situation from which she sought relief.

Pertinent to the issues raised in this appeal, the judge found defendant met his burden pursuant to Crowe v. De Gioia, 90 N.J. 126 (1982), and granted defendant's order to show cause. The judge stated "the issue is the best interest of the children." He further stated:

> So we have an order of the [c]ourt that has clearly been violated.
>
> [Plaintiff's counsel] makes a point, of course, that the [c]ourt at the last hearing didn't necessarily make a best-interest determination as to changing custody of the children. And I did so because [defendant] came across as a very credible witness. He was very honest about saying the fact that he really wasn't seeking that. I think as my decision reflects from the earlier hearing, I was satisfied that we have a good mother and a good father and that the children would be . . . benefitted if they stayed within a certain radius. . . .
>
> . . . .
>
> Although I didn't make a best-interest finding at the time, quite frankly, the [c]ourt would have no . . . hesitancy in doing so since I found that both parents

were fit, both of them have well-bonded relationships with the children, and that the children needed both of them in their lives.

When plaintiff's counsel reiterated her client could not comply with the order due to the economic hardship it would cause, the judge concluded as follows:

> [Defendant] is entitled under Rule 1:10-3 to seek redress from this [c]ourt. The [c]ourt can employ [Rule] 1:10-3. In addition, Rule 5:3-7 provides this [c]ourt with a panoply of relief, including transferring the children.
>
> . . . .
>
> I do find it's in the best interest of the children to continue to be near their father and have visitation with their mother.

The judge entered the September 28, 2018 order. This appeal followed.[2]

## I.

"The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (internal citation omitted) (quoting In re Return of Weapons to J.W.D., 149

---

[2] Following the filing of plaintiff's notice of appeal, the trial judge issued an amplification of his decision pursuant to Rule 2:5-1(b).

N.J. 108, 117 (1997)). "On the other hand, where our review addresses questions of law, a 'trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles.'" N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (quoting N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)). The standard of review for conclusions of law is de novo. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

On appeal, plaintiff argues the trial judge changed custody without holding a best interests hearing and without warning plaintiff custody would modify if she did not return. She argues there was no change in circumstances since entry of the July order warranting a modification of custody and the judge did not consider alternative remedies.

Plaintiff also argues the judge applied the wrong standard in adjudicating the intra-state relocation issue. She argues the judge rewrote the MSA by imposing a fifteen-mile radius where the parties had not previously agreed to one. She asserts the judge acted arbitrarily and capriciously and the matter should be remanded to a different fact-finder.

A-1168-18T4

A.

"Notwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by an application in the action. . . . In family actions, the court may also grant additional remedies as provided by [Rule] 5:3-7." R. 1:10-3. "Relief under R[ule] 1:10-3, whether it be the imposition of incarceration or a sanction, is not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order." Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997). In pertinent part, Rule 5:3-7(a) states:

> On finding that a party has violated an order respecting custody or parenting time, the court may order, in addition to the remedies provided by R[ule] 1:10-3, any of the following remedies, either singly or in combination: . . . (6) temporary or permanent modification of the custodial arrangement provided such relief is in the best interest of the children[.]
>
> [(emphasis added)].

Moreover,

> [i]n custody cases, it is well settled that the court's primary consideration is the best interests of the children. . . . The court must focus on the "safety, happiness, physical, mental and moral welfare" of the children. Fantony v. Fantony, 21 N.J. 525, 536 (1956). See also P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) ("In issues of custody and visitation '[t]he question is always what is in the best interests of the children, no matter what the parties have agreed to.'") . . . Custody issues are resolved

using a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c).

[Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citations omitted)].

Pursuant to Rule 5:3-7(a)(6), there is no question the trial judge had authority to transfer custody to defendant as a sanction for plaintiff's failure to comply with the July order mandating she return the children. Contrary to plaintiff's argument, the plain language of Rule 5:3-7(a) does not require the court select a less severe sanction before it can order a modification of custody. However, we hold Rule 5:3-7(a)(6) requires a separate adjudication, which considers the children's best interests and findings pursuant to N.J.S.A. 9:2-4, before the sanction is ordered. Additionally, because the relief granted under Rule 5:3-7(a) is coercive in nature and derived from Rule 1:10-3, the sanctioned parent may seek termination of the sanction when the parent complies with the court's order. The court should be solicitous of such applications.

This is because custody matters directly impact the welfare of children. The designation of a parent of primary residence is a consequential decision because "the primary caretaker has the greater physical and emotional role" in a child's life. Pascale v. Pascale, 140 N.J. 583, 598 (1995). Where there is already a judgment or an agreement affecting custody in place, it is presumed

it "embodies a best interests determination" and should be modified only where there is a "showing [of] changed circumstances which would affect the welfare of the children." Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993). In the context of a transfer of child custody as a sanction, affording both parents the ability to address whether a transfer of custody is in the best interests of the children and requiring the court to make the necessary statutory findings provides the necessary process and a reviewable record. Therefore, a best-interest hearing and findings pursuant to N.J.S.A. 9:2-4 is required where a court transfers custody as a sanction.

Here, the trial judge did not consider the N.J.S.A. 9:2-4 best-interest factors before transferring custody to defendant. The judge noted defendant did not "really" seek custody of the children. Notwithstanding defendant's exercise of parenting time under the MSA and good relationship with the children, the parties agreed plaintiff would serve as the parent of primary residence when they divorced and plaintiff fulfilled the role without incident for five years following the divorce. In this context, the best interests of the children required more thoughtful investigation before the judge ordered a custody transfer. For these reasons, we reverse the September order and remand the matter to the trial judge to hold a hearing and make the necessary best-interest findings.

A-1168-18T4

B.

We also reverse the July order because the trial judge applied the wrong law. The trial judge applied our holding in <u>Schulze</u>, which requires the application of the <u>Baures</u> factors to address whether a parent may proceed with an intra-state relocation. <u>Schulze</u>, 361 N.J. Super. at 427. However, at the time the judge rendered his decision, our Supreme Court already spoke in <u>Bisbing</u>, overturned the <u>Baures</u> standard, and held the best-interest standard embodied in N.J.S.A. 9:2-4 governs interstate removal of children. <u>Bisbing</u>, 230 N.J. 309, 312-13.

In overturning <u>Baures</u>, our Supreme Court stated:

> In short, social scientists who have studied the impact of relocation on children following divorce have not reached a consensus. Instead, the vigorous scholarly debate reveals that relocation may affect children in many different ways. The Court's conclusion in <u>Baures</u> . . . that in general, "what is good for the custodial parent is good for the child" is no doubt correct with regard to some families following a divorce. . . . As the social science literature reflects, however, that statement is not universally true; a relocation far away from a parent may have a significant adverse effect on a child. . . .

> Moreover, the progression in the law toward recognition of a parent of primary residence's presumptive right to relocate with children, anticipated by this Court in <u>Baures</u>, has not materialized.

> [<u>Bisbing v. Bisbing</u>, 230 N.J. 309, 330 (2017).]

A-1168-18T4

Because the science and anticipated outcomes undergirding the <u>Baures</u> factors have not borne out as the Court anticipated and no longer apply to interstate removals, they should not apply to the intra-state relocations discussed in <u>Schulze</u>. Although, as the trial judge noted, the July order was not appealed, its application of the wrong law produced the unsound foundation upon which the later transfer of custody rests. <u>See</u> <u>N. Jersey Neurosurgical Assocs., PA v. Clarendon Nat'l Ins. Co.</u>, 401 N.J. Super. 186, 196 (App. Div. 2008) (addressing an order not on appeal because the order on appeal was "premised on" a mistake of law in the earlier order).

For these reasons, we reverse the July order and direct the trial judge to reconsider his decision by applying the best interests factors under N.J.S.A. 9:2-4.[3] We further hold where a parent of primary residence seeks an intra-state relocation and the parent of alternate residence opposes it, the parent of alternate residence must convince the court the move constitutes a change in

---

[3] Because we reversed the July order as a whole, we do not reach plaintiff's claim the judge rewrote the MSA by imposing a fifteen-mile radius of defendant's home in which she could reside. However, if the judge determines to re-impose such a restriction, he should make findings explaining his decision, as he did not do so in the July order.

circumstance affecting the best interests of the children.[4]  If a prima facie case is established, the trial court must assess custody and parenting time, by applying the N.J.S.A. 9:2-4 factors to determine whether the best interests of the children requires a modification of one or both.

C.

Finally, we decline to remand this matter to a different judge because we do not share the view the judge acted arbitrarily and capriciously.  Indeed, the transfer of custody is a remedy expressly permitted by Rule 5:3-7(a)(6).  Our review of the record does not convince us the mistaken application of law is grounds for remand to a different judge.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4]  We do not opine which parent must make the application to the court. However, in order to avoid a situation similar to this case, the obligation of each parent to keep the other apprised of a change in residence should be memorialized in writing regardless whether custody and parenting time are settled or adjudicated.  This type of communication is not only common sense, but is the sort of communication envisioned by the Legislature as consonant with a child's best interests when it enacted N.J.S.A. 9:2-4, requiring the court to consider "the parents' ability to agree, communicate and cooperate in matters relating to the child[.]"

A-1168-18T4